**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ALICIA THOMPSON, individually and on behalf of all others similarly situated, | Case No. 2:15-cv-03576-AB |
| *Plaintiff*, | |
| v. | |
| GLOBAL MARKETING RESEARCH SERVICES, INC., a Florida corporation, | |
| *Defendant*. | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS OR TRANSFER**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................... iii

I.   INTRODUCTION & FACTUAL BACKGROUND ...................................................1

II.  ARGUMENT .......................................................................................3

   A. GMRS misunderstands claim splitting—the class definition does not overlap
      any other case and GMRS so the parties are not the same ................................3

   B. GMRS's push for Rule 12(b)(6) dismissal also fails—the TCPA contains no
      "political purpose exemption, the statute is constitutional, and GMRS's ported
      number inquiry is an affirmative defense ..............................................6

      1. Plaintiff alleges facts sufficient to establish GMRS's liability under the TCPA—
         there is not "political purpose" exemption. ........................................6

      2. Plaintiff need not plead that her phone number was not previously ported from
         a landline—such an argument is an affirmative defense ............................9

      3. GMRS's constitutionality defenses badly misunderstand the TCPA, which
         courts have repeatedly upheld in the face of attacks on its constitutionality ......10

   C. There is no basis for transferring the case under either the "first to file" rule or
      under 28 U.S.C. 1404(a) ............................................................14

      1. The "first to file rule" does not warrant a transfer because the parties are not
         the same ........................................................................14

      2. The "interest of justice" factor weighs heavily against a transfer under
         Section 1404(a) .................................................................16

   D. Paragraph 17 of the Complaint should not be stricken under Rule 12(f)—the
      allegations pled in that paragraph are plainly relevant to this lawsuit ..................17

III. CONCLUSION ...................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Court of Appeals Cases**

*Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036 (9th Cir. 2012) .....................................7

*E.E.O.C. v. Univ. of Pennsylvania*, 850 F.2d 969 (3d Cir. 1988)....................................................14

**District Court Cases**

*Adoma v. Univ. of Phoenix, Inc.*, 711 F. Supp. 2d 1142 (E.D. Cal. 2010) ....................................14

*Aja De Los Santos v. Millward Brown, Inc.*,
    Case No. 9:13-cv-80670-DPG (S.D. Fla.) ...........................................................................8 n.5

*Birchmeier v. Caribbean Cruise Line, Inc.*,
    No. 12 C 4069, 2012 WL 7062748 (N.D. Ill. Dec. 31, 2012) ....................................................7

*Bloom v. Shalom*,
    No. CIV. 13-1442, 2014 WL 356624 (W.D. Pa. Jan. 31, 2014)...............................................17

*Charvat v. Allstate Corp.*, 29 F. Supp. 3d 1147 (N.D. Ill. 2014)...................................................10

*Dann v. Lincoln Nat. Corp.*, 272 F.R.D. 139 (E.D. Pa. 2011).......................................................18

*Eisai Co., Ltd. v. Teva Pharmaceuticals USA, Inc.*,
    629 F. Supp. 2d 416 (D. N.J. 2009)..........................................................................................18

*FMC Corp. v. AMVAC Chem. Corp.*, 379 F. Supp. 2d 733 (E.D. Pa. 2005)................................14

*Gardner v. GC Servs., LP,*,
    No. 10-CV-997-IEG(CAB), 2010 WL 2721271 (S.D. Cal. July 6, 2010) ........................14, 15

*Garnas v. Rimon, P.C.*,
    No. CIV. A. 14-7246, 2015 WL 4578922 (E.D. Pa. July 30, 2015)........................................16

*Hallmark v. Cohen & Slamowitz, LLP*, 283 F.R.D. 136 (W.D.N.Y. 2012)...................................18

*Himes v. Client Servs. Inc.*, 990 F. Supp. 2d 59 (D. N.H. 2014) ......................................................7

*Kolinek v. Walgreen Co.*,
    No. 13 C 4806, 2014 WL 518174 (N.D. Ill. Feb. 10, 2014)....................................................10

*Leon . Target Corp.*,
    No. 3:CV-15-01, 2015 WL 1275918 (M.D. Pa. Mar. 19, 2015) ...............................................7

*Maryland v. Universal Elections*, 787 F. Supp. 2d 408 (D. Md. 2011)......................................7, 13

*Mankin v. Mountain West Research Center, L.C.*,
   Case No. 2:13-cv-06447-DSF-AGR (C.D. Cal.) ..................................................8 n.5

*Montgomery Cnty., Pa. v. MERSCORP, Inc.*, 16 F. Supp. 3d 535 (E.D. Pa. 2014) .....................11

*Nicole Zilveti v. Global Marketing Research Services, Inc.*,
   No. 4:2015-cv-02494-MMC (N.D. Cal.) ............................................................*passim*

*Robert Martin, et al. v. Global Marketing Research Services, Inc.*,
   No. 6:14-cv-1290-ORL-31-KRS (M.D. Fla.) ....................................................*passim*

*River Rd. Dev. Corp. v. Carlson Corp.-Northeast*,
   No. 89 7037, 1990 WL 69085 (E.D. Pa. May 23, 1990) .......................................17

*Ross v. U.S. Nat'l Ass'n*, 542 F. Supp. 2d 1014 (N.D. Cal. 2008) ...................................14

*Shamblin v. Obama for America*,
   Civ. 8:13-2438-T-33TBM, 2014 WL 631931 (M.D. Fla. Feb. 18, 2014) ..................8

*Sterton v. Option One Mortgage Corp.*, 479 F. Supp. 2d 479 (E.D. Pa. 2007) .............................10

*Tara M. v. City of Philadelphia*, 1998 WL 464910 (E.D. Pa. 1998) .................................3

*Total Containment, Inc. v. Environ Products, Inc.*,
   No. CIV. A. 91-7911, 1992 WL 208981 (E.D. Pa. Aug. 19, 1992) ........................19

*United States v. Educ. Mgmt. Corp.*,
   871 F. Supp. 2d 433 (W.D. Pa. 2012) ................................................................17

*Wreyford v. Citizens for Transportation Mobility*,
   957 F. Supp. 2d 1378 (N.D. Ga. 2013) ..............................................................11

## Statutes and Rules

Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ...........................*passim*

Fed. R. Civ. P. 5.1(a) ............................................................................11 n.9

Fed. R. Civ. P. 12(b)(6)...........................................................................6-10

Fed. R. Civ. P. 12(f)...........................................................................17-19

28 U.S.C. 1404(a) ....................................................................................16, 17

## Other Authorities

In re Rules and Regs. Implementing Tel. Consumer Protection Act of 1991 .................................8

## I.      INTRODUCTION & FACTUAL BACKGROUND

This case challenges Defendant Global Marketing Research Services, Inc.'s ("Defendant" or "GMRS") serial and plain violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"). In short, GMRS makes repeated and harassing political survey calls to cellphone users who never consented to be called by GMRS in the first place. That is, rather than secure any prior express consent, GMRS's third-party clients—politicians and political groups that GMRS refuses to identify—simply lift phone numbers off of public voter registration lists and then transmit the numbers to GMRS. GMRS then loads the numbers into its auto-dialer and proceeds to spam consumers.[1]

Plaintiff Alicia Thompson ("Plaintiff" or "Thompson") is just one out of potentially thousands of cell phone users in Pennsylvania who've received GMRS's pestering calls. She brings this action, on behalf of herself and all other persons in Pennsylvania, to stop the calls and for statutory damages.

Seeking to dodge what amounts to otherwise clear liability—and hoping to deny Plaintiff her day in Court—GMRS files what amounts to three motions: first, a Rule 12(b)(6) Motion to Dismiss, in which it argues: (1) that this case is the supposed result of improper claim splitting, (2) that the TCPA contains some type of "political purpose" exemption, (3) that the TCPA is unconstitutional, and (4) that Plaintiff has neglected to plead, as purportedly required, that her cellphone was not a "ported" landline phone number. Second GMRS moves to transfer the case to the Middle District of Florida, claiming that transfer is required under both the "first to file"

---

[1] Although GMRS asserts that, "Once registered the voter publishing his or her phone number plainly intends to receive political related calls at that published number," (Def. Mot. ¶ 3, at 2), there is no basis for such a conclusion. GMRS is never mentioned on any voter registration form, nor is any oral consent obtained. In short, GMRS advances a theory of *implied* consent that flies in the face of the TCPA's plain requirement of prior *express* consent.

rule and under 28 U.S.C. § 227 1404(a). Third and finally, GMRS moves to strike Paragraph 17 of Plaintiff's Complaint—which contains a sample of the hundreds of complaints that can be found online about GMRS's phone calls—under Federal Rule 12(f) (collectively, GMRS's three requests for relief are referred to as (the "Motion" or "GMRS's Motion").

Fortunately for Thompson and the thousands of Pennsylvania residents who've had their TCPA rights similarly violated, GMRS's Motion[2] falls apart and should be denied for at least four reasons.

First, GMR misunderstands claim splitting. Put simply, the class definition in this case does not overlap with the class definitions plead in the *Martin* case (Middle District of Florida) or in the *Zilveti* case pending in the (Northern District of California). The *Martin* case express carves out consumers in Pennsylvania and California, and the *Zilveti* case is California-only.

Second, none of GMRS's arguments for dismissal under Rule 12(b)(6) has merit. The TCPA does not contain an exception for "political purpose" calls, the statute's constitutionality has been repeatedly upheld, and whether the cellphone was ported from a landline is an affirmative defense—not fodder for an attack on the pleadings.

Third, GMRS's "first to file" rule argument is groundless—this case does not involve the same parties as *Martin*, *Zilveti*, or any other case. Likewise, no transfer is required under § 1404(a). This case was filed separate from the *Martin* case specifically because GMRS asserted (and continues to assert) in that matter that claims for people like Plaintiff Thompson are irrelevant to that proceeding. In short, GMRS's position in the *Martin* case is that that action is limited solely to GMRS's survey campaigns in the states where the named plaintiffs in *Martin*

---

[2] As an initial matter, it appears that GMRS has violated Local Rule 5.1.2(6) by electronically filing exhibits in excess of 50 pages without first obtaining Court approval.

reside (North Carolina and New Hampshire only) while in this case it does an about-face and asserts that Thompson should've filed her action in the Florida proceeding as well.

Fourth and finally, GMRS presents no basis for striking Paragraph 17 of the Complaint. The fact that others have complained about GMRS's calls is plainly relevant to the issues in this lawsuit—namely, that numerous cellphone users have been subjected to GMRS's autodialed calls without giving prior express consent to receive them.

Accordingly, and as explained further below, the Court should deny Defendant's Motion to Dismiss or to Transfer.

## II.   ARGUMENT

### A.   GMRS misunderstands claim splitting—the class definition does not overlap with any other case and GMRS so the parties are not the same

For GMRS's lead argument, it asserts that this case is a "plainly duplicative, improper attempt to split an identical cause of action earlier filed in another federal court." (Def. Mot. ¶ 13, at 4.) Indeed, to hear GMRS tell it, this case "is the same action commenced a year ago against GMRS in the Middle District of Florida alleging the identical claims on behalf of other similarly situated cell users." (*Id.* ¶ 9, at 3.) This simply isn't accurate.

To dismiss on account of claim splitting, "there must be the same parties, or at least such as represent the same interest; there must be the same rights asserted and the same relief prayed for, the relief must be founded upon the same facts; and the essential basis of the relief sought must be the same." *Tara M. v. City of Philadelphia*, 1998 WL 464910, at *2 (E.D. Pa. 1998) (emphasis added). GMRS asserts that *Robert Martin, et al. v. Global Marketing Research Services, Inc. and John Does 1-100* pending in the Middle District of Florida, Case No. 6:14-cv-1290-ORL-31-KRS ("*Martin*") "is the same action" as this case is. GMRS also claims that these

3

two cases are copies of a third case—*Nicole Zilveti v. Global Marketing Research Services, Inc.* pending in the Northern District of California, Case No. 4:2015-cv-02494-MMC. ("*Zilveti*").

GMRS is incorrect. First, while both the *Martin* and *Zilveti* actions are similar insofar as they allege claims against GMRS under the TCPA, the class definitions in no way overlap. Specifically, in the *Martin* Amended Complaint, the class definition expressly excludes "all Persons in states where any federal class action has been filed against GMRS seeking certification of a class limited to the persons of such states, including without limitation California and Pennsylvania."[3] (*Martin* Dkt. 48, ¶ 31.) The *Zilveti* case, in turn, limits its class to "All individuals in California [who received GMRS's calls]." (*Zilveti* Dkt. 1, ¶ 22.) Likewise, the instant case limits the proposed class to "All individuals in Pennsylvania . . ." (Dkt. 1, ¶ 22.) Because the class definitions are distinct, the matters cannot be said to involve "the same parties." Put another way, if the named Plaintiffs are successful in *Martin* or *Zilveti*, that order would not be binding on Thompson or any other Pennsylvania consumer's rights.

Additionally, GMRS can hardly argue that the cases share the same rights asserted and the same relief prayed for, founded upon the same facts, with the essential basis of the relief being the same in each case. While Plaintiff agrees that GMRS acted in a substantially-similar manner towards all persons it called, GMRS has expressly argued in the *Martin* action that that

---

[3] This Court should be aware that GMRS's assertion that it is "moving to set aside the [*Martin*] Amended Complaint in the Florida action" (Def. Mot. ¶ 23 at 6) hides important facts from both Courts. The truth is that Plaintiff filed a motion for leave to amend in *Martin*—expressly explaining to the *Martin* court over two full pages that the class definition needed to be modified to exclude California and Pennsylvania—but GMRS did not bother filing an opposition on time. (*See Martin* Dkt. 45 at 14.) In fact, GMRS did not object to the Amended Complaint until over four weeks after it had been filed and served on it. It has now moved to set aside the *Martin* Court's Order granting Plaintiffs leave to amend on the basis that the *Martin* Court "overlooked …potential defense objections" in granting leave. As with this Court, GMRS's motion to set aside the *Martin* Court's Order granting leave to amend is silent with respect to GMRS's own failure to timely raise its supposed potential defense objections that were supposedly overlooked.

proceeding should be strictly limited to the surveys GMRS conducted in states where the named plaintiffs in that case reside (North Carolina and New Hampshire). That is, GMRS has objected in the *Martin* case to producing *any* information about *any* other surveys or clients, and has indicated it will object during the class certification stage to the admissibility of any evidence regarding surveys it conducted outside of those two states.[4] As such, this Court should reject any about-face assertion from GMRS in this proceeding that all of the claims are the same and therefore Plaintiff has engaged in claim splitting (or, as set forth below, that the case needs to be dismissed under first-to-file jurisprudence or transferred under § 1404).

In short, while the cases share the same assertion of rights and prayer for relief, the test for claim splitting *also* requires that the parties be the same, which they are plainly not. As such, the Court should reject GMRS's Motion based on claim splitting.

---

[4] GMRS first raised these objections in its discovery responses in the *Martin* case. For example, in its response to Interrogatory No. 4—which seeks the identity of all campaigns through which GMRS made calls where prior express consent was obtained in the same way as consent was supposedly obtained to call the named Plaintiff in this case—GMRS objected that it such information is "unrelated to this Plaintiff's survey" and that "since there is no allegation that [the named plaintiff] was called during any other survey, this interrogatory is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence." (*See* Interrogatories, attached as Exhibit A, Interog. No. 4.) GMRS raised substantially similar objections to Interrogatory Nos. 6, 7, 8, 18, 19, 20, and 21 (*see id.*) and to Request for Production No. 36. (*See* Requests for Production, attached as Exhibit B, RTP 36.) During meet and confers, GMRS's counsel confirmed that GMRS would not produce information about surveys other than the surveys for which the named plaintiffs were called (or the states where the named plaintiffs reside—GMRS hasn't been clear). Plaintiff moved to compel on, *inter alia*, this issue but the Court Ordered the parties to further meet and confer (where GMRS has again stood on its objections). Indeed, as recently as August 13, 2015—the day before this Opposition was filed— GMRS's counsel confirmed that "For the present I stand on my objection and will not produce records of political surveys and cell call data other than as pertains to the FL named plts." (*See* "Schwartz Email of August 13, 2015," attached as Exhibit C.) As such, so long as GMRS stands on its defense that the *Martin* case is limited to New Hampshire and North Carolina (the states of the Florida plaintiffs), it shouldn't be allowed to switch positions before this Court and argue that all of the instant claims should be dismissed or transferred on account of *Martin*.

**B.      GMRS's push for Rule 12(b)(6) dismissal also fails—the TCPA contains no "political purpose" exemption, the statute is constitutional, and GMRS's ported number inquiry is an affirmative defense.**

GMRS argues that the case should be dismissed because: (1) political survey calls to cell phones are supposedly not covered by the TCPA, (2) that Plaintiff failed to plead that her phone number was not a ported line, and (3) that the law is unconstitutional. GMRS is wrong on all fronts. No "political purpose" exemption exists under the TCPA—indeed, numerous survey companies like GMRS have been sued under the TCPA (and many have recently settled for millions of dollars) throughout the country. Furthermore, GMRS's other assertions (that Plaintiff has failed plead that the phone number wasn't ported from a landline and that the statute is unconstitutional) are affirmative defenses—not grounds for Rule 12(b)(6) dismissal. As such, and as explained further below, the Motion to Dismiss should be denied.

**1.      Plaintiff alleges facts sufficient to establish GMRS's liability under the TCPA—there is no "political purpose" exemption.**

Following its failed claim-splitting argument, GMRS asserts that Plaintiff has failed to include any "allegations that GMRS made any phone calls to anyone for telemarketing commercial purposes; nothing to suggest that Defendant has unlawfully called cell phones to sell the cell users anything." (Def. Mot. ¶ 29.) GMRS is correct on the facts but wrong on the law: the TCPA doesn't require that the calls be for telemarketing—political calls are actionable, too.

The TCPA makes it unlawful for any person "to make any call [other than a call made for emergency purposes or made with the prior express consent of the called party] using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . ." 47 U.S.C. § 227(b)(1)(A)(iii). Thus, to state a claim for a violation of the TCPA, "a plaintiff must allege: (1) that the defendant called the plaintiff's cellular telephone; (2) using an ATDS; (3) without the plaintiff's prior express

consent." *Leon v. Target Corp.* No. 3:CV-15-01, 2015 WL 1275918, at *2 (M.D. Pa. Mar. 19,

2015) (citing *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012)).

        Plaintiff has alleged precisely that. Specifically, she has pleaded that GMRS is in the

business of conducting telephone surveys using an autodialer, that she did not give GMRS

consent to call her cell phone, and that she received several calls on that cellphone from GMRS.

(Compl. ¶¶ 10-21.) No more is needed to state a claim.

        GMRS seeks to impose an additional element, however, that the calls not be for

"**political** purposes." (Def. Mot. ¶ 29, at 7-8) (emphasis in original). That is, citing nothing,

GMRS asserts that the TCPA somehow exempts political survey calls. This badly misreads the

law. There simply is no "political purpose" exemption. *See Birchmeier v. Caribbean Cruise*

*Line, Inc.*, No. 12 C 4069, 2012 WL 7062748, at *1 (N.D. Ill. Dec. 31, 2012) ("Defendants argue

that the complaint establishes that because the calls are alleged to have involved a political

survey, they are non-actionable because the FCC has exempted political surveys from coverage

under the TCPA. **This argument is a non-starter**.") (emphasis added); *Maryland v. Universal*

*Elections*, 787 F. Supp. 2d 408, 413 (D. Md. 2011) (rejecting the argument that political calls are

exempt from the TCPA and holding that "All calls made using an 'automatic telephone dialing

system,' not just calls made for a commercial purpose, must satisfy [the TCPA]"). Rather, "[t]he

only exemptions in the TCPA that apply to cellular phones [apart from a narrow exemption that

exists for autodialed calls placed to a ported number] are for emergency calls and calls made

with prior express consent." *Himes v. Client Servs. Inc.*, 990 F. Supp. 2d 59, 68 (D. N.H. 2014).

Indeed, even Obama for America (President Obama's reelection campaign) has been sued for

political calls made using an autodialer without prior express consent—Obama for America's

motion to dismiss was denied. *Shamblin v. Obama for America*, Civ. 8:13-2438-T-33TBM, 2014 WL 631931 (M.D. Fla. Feb. 18, 2014).[5]

Admittedly, the requirements for prior express consent for political survey calls differ from the consent needed for telemarketing calls. As the FCC's Order in *In re Rules and Regs. Implementing Tel. Consumer Protection Act of 1991,* 27 FCC Rcd. 1830, 1841 ¶ 28 (Feb. 15, 2012) ("2012 TCPA Order") explains:

> Moreover, while we revise our consent rules to require prior written consent for autodialed or prerecorded *telemarketing* calls, we maintain the existing consent rules for *non-telemarketing, informational* calls, such as those by or on behalf of tax-exempt non-profit organizations, ***calls for political purposes***, and calls for other noncommercial purposes, including those that deliver purely informational messages such as school closings. Our rules for these calls will continue to permit oral consent if made to wireless consumers and other specified recipients, and will continue to require no prior consent if made to residential wireline consumers…Additionally, we note that many commenters expressed concern about obtaining written consent for certain types of autodialed or prerecorded calls, including debt collection calls, airline notification calls, bank account fraud alerts, school and university notifications*, research or survey calls,* and wireless usage notifications. ***Again, such calls, to the extent that they do not contain telemarketing messages,*** would not require any consent when made to residential wireline consumers, but ***require either written or oral consent if made to wireless consumers and other specified recipients***.

(2012 TCPA Order at 1841, ¶ 28.) This shows that, contrary to any assertion that GMRS's political calls are not covered by the TCPA, such calls are expressly prohibited when made without oral or written prior express consent when they are placed to cellphones.[6]

---

[5] While GMRS asserts that the instant allegations are meritless, other similar TCPA class actions challenging political survey calls have resulted in substantial class action settlements. *See Aja De Los Santos v. Millward Brown, Inc*., Case No. 9:13-cv-80670-DPG (S.D. Fla.) (for an estimated class of 800,000 people, the parties agreed on a $11 million fund, 25% as attorney's fees, and with a claim amount of $50, reduced *pro rata* should the number of claims exceed the relief provided (final approval set for June 12, 2015)); *see also Mankin v. Mountain West Research Center, L.C*. Case No. 2:13-cv-06447-DSF-AGR (C.D. Cal.) (15,703 class members to share in a $1,495,000 fund to pay claims of $65.00 plus attorney's fees of $373,750).

GMRS's failure to apprise the Court of these authorities does not negate their import. There is no political purpose exception and the Rule 12(b)(6) motion should be denied.[7]

> **2.    Plaintiff need not plead that her number was not previously ported from a landline—such an argument is an affirmative defense.**

Turning to the sufficiency of Plaintiff's pleadings, GMRS states that "Because there are no allegations whether calls made to Ms. Thompson's cellular device or any other putative Plaintiffs' cell phones involve prior, ported land-line numbers,[8] the Complaint fails to assert sufficient facts that take Plaintiffs' (sic) cause of action outside the exemption under the TCPA for cell phone numbers ported from land-lines." (Def. Mot. at 8.) This is a convoluted argument. Ms. Thompson's hypothetical use of a ported line (she doesn't use one) would be an affirmative defense for GMRS to assert (and then prove) and is improperly set forth in its Motion.

---

[6] As will be explained at the appropriate time, GMRS didn't get any form of *express* consent and has admitted as much in the *Martin* case. *See* GMRS Response to Doc. Req. No. 20 ("…the published list of North Carolina registered voters' self-disclosed phone numbers generally available to the public *implied* the consent of each person so listed to be called for participation in a political survey….") (Emphasis added.) Even survey calls require oral or written express consent—implied consent, like the consent GMRS claims it obtains, is on its face insufficient.

[7] GMRS also makes a statement within this "political purpose" argument that that Plaintiff hasn't alleged "they type of cell devices" being used by "this or other putative Plaintiffs." (Def. Mot. ¶ 29.) Again, GMRS seeks to impose requirements that don't exist in the TCPA and that it is simply fabricating from whole cloth.

[8] It is worth mentioning that GMRS makes a false statement in the "Ported Lines 101" section of its Motion (Def. Mot. ¶ 30, at 8.) where it states that "Technology has advanced greatly since the TCPA was enacted 25 years ago but not to the point of being able with any known software to detect when a landline number has been ported to a cell phone . . ." (*Id.*) Though GMRS may be unaware of such programs, such software is indeed on the market. For example, The Neustar Intermodal Ported Telephone Number Identification Service—available for an annual subscription of $1,200—"provides a listing of nationwide ported telephone numbers that have been removed from wire line to wireless and vice versa, enabling users to avoid using auto-dialers or pre-recorded messages to call wireless numbers." https://www.quentinsagerconsulting.com/neustar.htm (last visited August 12, 2015). The information is "distributed daily." (*Id.*) Hence, notwithstanding its failure to research available software solutions, the simple truth is that GMRS is wrong when it asserts that discerning which phone numbers have been ported from landlines is beyond the capacity of present technology.

GMRS is indeed correct that a narrow exemption exists for autodialed calls "placed to a wireless number that has been ported from wireless service . . .; not knowingly made to a wireless number, and made within 15 days of the porting of the number from wireline to wireless service . . ." 47 C.F.R. 64.1200(a)(1)(iv). However, assertions that TCPA exemptions apply are affirmative defenses. *See Kolinek v. Walgreen Co.*, No. 13 C 4806, 2014 WL 518174, at *2 (N.D. Ill. Feb. 10, 2014) (Kennelly, J.) (holding that prior express consent "is an affirmative defense on which the defendant bears the burden of proof; it is not a required element of the plaintiff's claim"). "An affirmative defense is an assertion raising new facts and arguments that, if proven, defeat the plaintiff's claim even if the allegations in her complaint are true." *Sterton v. Option One Mortgage Corp.*, 479 F. Supp. 2d 479, 482 (E.D. Pa. 2007).

There is no allegation that Thompson's cell phone number was ever ported from a land line. If, hypothetically, GMRS has information that Thompson's cell phone number was ported, it could file an Answer and plead this as an affirmative defense. It did not—most likely because such an affirmative defense would be frivolous—and the Court should refuse to dismiss on such unfertile grounds. *See Charvat v. Allstate Corp.*, 29 F. Supp. 3d 1147, 1149 (N.D. Ill. 2014) ("Because plaintiffs are not required to anticipate and defeat affirmative defenses, dismissal is only appropriate if the affirmative defense is set out entirely in plaintiff's complaint") (citation omitted). Indeed, adopting GMRS's approach would lead to absurd results. That is, plaintiffs would need to guess which affirmative defenses defendants like GMRS may theoretically assert and then plead in the complaint that the affirmative defenses don't apply.

GMRS's Motion should be denied for this reason as well.

**3.  GMRS's constitutionality defenses badly misunderstand the TCPA, which courts have repeatedly upheld in the face of attacks on its constitutionality.**

Next, although it has not identified a single case where any court has ever held as such, GMRS argues for dismissal on the ground that the TCPA is unconstitutional as applied to it.[9] (Def. Mot. ¶¶ 32-36, at 8-9.) GMRS is grasping at straws.

First, like the ported number issue, challenging the constitutionality of the TCPA as applied to GMRS is an affirmative defense of which GMRS bears the burden of proof. *See Montgomery Cnty., Pa. v. MERSCORP, Inc.*, 16 F. Supp. 3d 535, 537 (E.D. Pa. 2014) (defendant "raises the affirmative defense that 21 P.S. 351 was unconstitutionally vague and unconstitutional as applied to them"). Thus, GMRS should file an answer and plead this affirmative defense—it is not proper fodder for a Rule 12(b)(6) motion.

Second, the *Martin* Court summarily rejected GMRS's constitutionality arguments (and the *Zilveti* Court noted that, as is the case here, GMRS failed to provide a notice to the United States regarding its constitutional challenge)[10]. GMRS arguments have no additional merit before this Court.

Third, GMRS's "support" is entirely inapposite. GMRS cites its first case, *Wreyford v. Citizens for Transportation Mobility*, 957 F. Supp. 2d 1378, 1381 (N.D. Ga. 2013), for the proposition that "the TCPA can only be deemed constitutional when applied to the caller if construed narrowly as not banning all political speech so as not violating the First Amendment." (Def. Mot. ¶ 32, at 8-9.) But *Wreyford* offers GMRS no help. There, the court engaged in a thorough examination of the TCPA's constitutionality in response to a claim that the TCPA "is not narrowly tailored to serve the government's interest because it operates as a 'total ban on

---

[9] Because GMRS is challenging the constitutionality of an act of Congress, it must promptly file a notice of constitutional question and give the United States an opportunity to intervene. *See* Fed. R. Civ. P. 5.1(a). GMRS has failed to do so.

[10] The United States has moved for additional time in the *Zilveti* case to file its petition to intervene to defend the constitutionality of the statute. (*Zilveti* Dkt. 32.)

cellular telephone calls' and therefore 'effectively silences a wide range of political speech'." 957 F. Supp. 2d at 1381. In response, the *Wreyford* court explained that, "The government responds by pointing out that the TCPA does not operate to ban all cellular telephone calls, permitting such calls with consent of the recipient. The government further contends that the defendants misconstrue the government's interest and the standard of review in this case because, under intermediate scrutiny for content neutral regulation, Congress is not required to use the least restrictive means of promoting the government interest. On all points the court agrees with the government." *Id. Wreyford* then continues:

> Congress focused on the intrusiveness of automated or prerecorded telephone calls. Congress narrowly tailored the TCPA to those interests by prohibiting only (1) unsolicited calls; (2) made to a cellular phone, in addition to telephone numbers assigned to other services; and (3) made from an automatic dialer and/or including an artificial or prerecorded voice.

> The defendants attempt to argue that section 227(b)(1)(A) is not narrowly tailored because it operates as a "total ban on cellular telephone calls" and "effectively silences a wide range of political speech." **However, contrary to the defendants' position, the TCPA does not ban calls to cellular phones in the context of political speech. The TCPA only prohibits unsolicited calls made through use of an automatic telephone dialing system or artificial prerecorded voice.** The TCPA also permits automated calls if the caller has "prior express consent of the called party.". . . Thus the defendants' argument fails.

> Additionally, the defendants contend that the TCPA could have been drafted more narrowly to apply only to commercial speech, assuming that non-commercial calls do not burden consumers to the extent that commercial calls do. However, as the government points out in their brief, the defendants misconstrue the government's interest and the level of scrutiny to be applied by the court. Congress specifically chose to regulate autodialed or prerecorded general, regardless of the message, *1382 because consumers considered these calls to be particularly invasive of privacy. Furthermore, even if commercial calls are more burdensome on average than non-commercial calls, under intermediate scrutiny, Congress is not required to use the least restrictive means of promoting the government interest, as the defendant concedes. *See Ward,* 491 U.S. at 798, 109 S.Ct. 2746.

12

*Id.* at 1781-1782 (emphasis added). Hence, *Wreyford* goes to great lengths to explain that the TCPA is constitutional. The fact that GMRS cites *Wreyford* for support is demonstrative of the flimsiness of its supposed defense.

The <u>only</u> other case GMRS is able to cite—*Maryland v. Universal Elections*, 787 F. Supp. 2d 408 (D. Md. 2011)—similarly offers it no help. As an initial matter, GMRS's assertion that the court in *Universal Elections* "held that proper compliance with the TCPA would require a company leaving a pre-recorded message for political purposes, to identify the caller and the party or purpose for which the calls were being made" (Def. Mot. ¶ 33, at 9) is simply irrelevant. *Universal Elections* dealt with a pre-recorded voice, which is why 47 U.S.C. § 227 (d)(3)(A)'s requirements were discussed. 47 U.S.C. § 227 (d)(3)(A) states:

> (3) Artificial or prerecorded voice systems
>
> The Commission shall prescribe technical and procedural standards for systems that are used to transmit any artificial or prerecorded voice message via telephone. Such standards shall require that—
>
> **(A)** all artificial or prerecorded telephone messages (i) shall, at the beginning of the message, state clearly the identity of the business, individual, or other entity initiating the call, and (ii) shall, during or after the message, state clearly the telephone number or address of such business, other entity, or individual;

47 U.S.C. § 227 (d)(3)(A). Thus, *University Elections* is inapposite to this case, which deals exclusively with autodialed calls to cellphones—not artificial or prerecorded voice calls.

And of course, in reality, *University Elections* actually supports denial of GMRS's Motion. Though it dealt with prerecorded voice calls, the court expressly held that the TCPA did <u>not</u> violate the First Amendment. 787 F. Supp. 2d at 418-24.

The TCPA is not unconstitutional—either generally or as applied to GMRS. Its Motion premised on these grounds should be denied as well.

**C.      There is no basis for transferring the case under either the "first to file" rule or under 28 U.S.C. § 1404(a).**

GMRS next argues that both the "first to file rule" and 28 U.S.C. § 1404(a) require transfer to the Middle District of Florida. (Mot. at 10-12.) GMRS is incorrect. The "first to file rule" is inapplicable here—the parties are not the same. Additionally, GMRS cannot show that transferring the case would be in the interest of justice.

**1.      The "first to file rule" does not warrant a transfer because the parties are not the same.**

The "first to file" rule gives a court "the power" to "enjoin the subsequent prosecution of proceedings involving **the same parties** and the same issues already before another district court" and "is used to dismiss or state a later-filed action."[11] *FMC Corp. v. AMVAC Chem. Corp.*, 379 F. Supp. 2d 733, 737 (E.D. Pa. 2005) (emphasis added). "Court[s] ha[ve] consistently recognized that the first-filed rule is not a rigid or inflexible rule to be mechanically applied . . ." *E.E.O.C. v. Univ. of Pennsylvania*, 850 F.2d 969, 976 (3d Cir. 1988) (citations omitted). In the context of a class action, "the classes, and not the class representatives, are compared." *Adoma v. Univ. of Phoenix, Inc.,* 711 F. Supp. 1142, 2010 WL 1797263, at *5 (E.D. Cal. 2010) (citing *Ross v. U.S. Nat'l Ass'n,* 542 F. Supp. 2d 1014, 1020 (N.D. Cal. 2008)).

A case out of the Southern District of California, *Gardner v. GC Servs., LP*, is particularly on point. In *Gardner*, the court held:

> In the present case, as Plaintiff correctly notes, the *only* identical party between the two actions is Defendant GC Services. As for the putative classes, there is no overlap at all, much less "substantial overlap." *See Byerson,* 467 F.Supp.2d at 635-36. Plaintiff's complaint here seeks to represent a putative class of employees who worked in Defendant's two call centers *in California.* (Def.Motion, Ex. I, ¶ 17.) The *Beasely* action in the Eastern District of Missouri, on the other hand, specifically *excludes* all California employees from the putative class. (*Id.,* Ex. A, ¶ 7.)

---

[11] GMRS has moved to *transfer* under the first to file rule, which is improper.

14

Defendant's arguments to the contrary are not persuasive. Although Defendant argues the actions were brought by the same attorneys against the same defendant, it fails to cite any case law as to why this would be relevant in this context. Similarly, the fact that the actions *before amendment* might have involved a "substantial overlap" between the parties is not dispositive. *See, e.g., Ross,* 542 F.Supp. at 1020 (denying defendant's motion to dismiss despite the fact that both actions were "brought against the same defendant by the same counsel, and both *initially alleged* putative classes of U.S. Bank employees in California, Oregon, and Washington" (emphasis added)). Rather, the focus is on the composition of the two classes at this point. *See, e.g., Walker v. Progressive Cas. Ins. Co.,* No. C03-656R, 2003 WL 21056704, at *2 (W.D. Wash. May 9, 2003) ("Whatever plaintiffs' stated intentions, the fact remains that they are currently parties in the *Camp* action, and it is this fact, not plaintiffs' future plans, that the court finds controlling."). Accordingly, in this case, the second factor of the "first to file" rule is not met because there is no longer any substantial similarity of parties between the two actions. *See Inherent.com,* 420 F.Supp.2d at 1097.

*Gardner v. GC Servs., LP*, No. 10-CV-997-IEG(CAB), 2010 WL 2721271, at *5 (S.D. Cal. July 6, 2010)

This case is the same. Similar to the discussion regarding claim splitting above, GMRS cannot overcome the requirement under "the first to file" rule that the parties be the same. Again—and not to beat a dead horse—but the class definitions in the supposedly-identical cases in no way overlap. In the *Martin* Amended Complaint, the class definition specifically excludes "all Persons in states where any federal class action has been filed against GMRS seeking certification of a class limited to the persons of such states, including without limitation California and Pennsylvania." (*Martin* Dkt. 48, ¶ 31.) The *Zilveti* case, in turn, limits its class to "All individuals in California [who received GMRS's calls]." (*Zilveti* Dkt. 1, ¶ 22.) Likewise, the instant case limits the proposed class to "All individuals in Pennsylvania . . ." (Dkt. 1, ¶ 22.) Moreover, the fact that the same attorneys are involved in all three cases is, as explained by the *Gardner* court, irrelevant to the first-to-file inquiry.

Because the class definitions are distinct, the matters do not involve "the same parties" and the Court should reject GMRS's Motion for this reason as well.

**2.      The "interest of justice" factor weighs heavily against a transfer under § 1404(a).**

Similarly, any transfer under 28 U.S.C. 1404(a) must be made in the interest of justice. *See Garnas v. Rimon, P.C.*, No. CIV. A. 14-7246, 2015 WL 4578922, at *2 (E.D. Pa. July 30, 2015) ("I do not find that transferring venue here would be in the interest of justice.")

Justice would not be served here by transferring the case as GMRS requests. As explained above, see Section II(A), *supra*, Plaintiff filed this action as a direct response to GMRS's position in the *Martin* litigation that that case is limited solely to GMRS's survey campaigns in the states where the named Plaintiffs in that case reside. That is, GMRS has taken the position that it need not provide *any* information relevant to any surveys that it conducted outside of the surveys for which it called the named plaintiffs (North Carolina and New Hampshire). As such, while GMRS is willing in the *Martin* case to provide information about surveys that GMRS conducted in those states, GMRS has repeatedly objected—as recently as the day before this brief was filed (see footnote 4, *supra*)—to providing any information about surveys conducted in the 48 other states (including California and Pennsylvania). As such, while the Parties continue to litigate this discovery dispute in Florida—for which the Court could rule that GMRS is required to provide information about states apart from the named plaintiffs' home states (but not Pennsylvania and California as they are specifically excepted) or it could limit the discovery to North Carolina and New Hampshire—out of an abundance of caution separate lawsuits were filed in California and Pennsylvania to ensure that irrespective of the Florida litigation those consumers would be able to pursue their claims against GMRS.

Moreover, the fact that this case involves a Pennsylvania-only class weighs against transferring the case to Florida. There is a strong public interest in favor of having this Court adjudicate the claims of a class of persons comprised entirely of residents of the Commonwealth.

At the end of the day, GMRS improperly seeks to have it both ways: first it refuses to produce any information or discovery regarding surveys conducted outside of the states where the named plaintiffs reside and then it says transfers are warranted when out-of-state cases are filed in response. The Court should see through GMRS's tactics and decline to grant its motion to transfer.

### D.   Paragraph 17 of the Complaint should not be stricken under Rule 12(f)—the allegations pled in that paragraph are plainly relevant to this lawsuit

For its final argument, GMRS moves to strike paragraph 17 of Plaintiff's complaint under Rule 12(f). (Def. Mot. at 13.) According to GMRS, paragraph 17—which alleges that hundreds of individuals have complained on publicly available websites about receiving unsolicited calls from GMRS (*see* Dkt. 1)—contains allegations that are "immaterial, impertinent, and scandalous" in addition to constituting "hearsay". (*Id.*) In reality, the standard for striking pleadings—which GMRS doesn't include in its motion (*see* mot. at 13)—under Rule 12(f) demonstrates that striking paragraph 17 is inappropriate.

The purpose of a Rule 12(f) motion is to "clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *United States v. Educ. Mgmt. Corp.*, 871 F. Supp. 2d 433, 460 (W.D. Pa. 2012). To succeed, the movant must "show that the allegations being challenged are so unrelated to the plaintiff's claims as to be unworthy of consideration and that their presence in the pleadings will be prejudicial." *Bloom v. Shalom*, No. CIV. 13-1442, 2014 WL 356624, at *2 (W.D. Pa. Jan. 31, 2014) (citing *River Rd. Dev. Corp. v. Carlson Corp.-Northeast*, No. 89 7037, 1990 WL 69085, at *7 (E.D. Pa. May 23, 1990) (the movant "must

clearly show that the matter sought to be stricken is outside the issues in the case and is prejudicial")). To strike paragraph 17, the Court would need to find that the paragraph bears "no possible relationship to the controversy and may cause prejudice to one of the parties, or [that] the allegations confuse the issues." *Eisai Co., Ltd. v. Teva Pharmaceuticals USA, Inc.*, 629 F. Supp. 2d 416, 425 (D. N.J. 2009). "Striking a pleading is a drastic remedy to be used sparingly because of the difficulty of deciding a case without a factual record." *Dann v. Lincoln Nat. Corp.*, 272 F.R.D. 139, 142 (E.D. Pa. 2011).

Applied here, the allegations in paragraph 17 involve conduct material and relevant to the issues in this lawsuit—specifically, that many people have publicly complained that GMRS called their cell phones without consent. These allegations are relevant to (among other things) GMRS's knowledge an intent at the time it committed the TCPA violations alleged here as well as the numerosity component of Rule 23. Moreover, GMRS has not made a showing of prejudice apart from a conclusory statement that the allegations are "designed solely to create prejudice against Defendant and inflame any jury that might make ultimate determinations whether the TCPA was violated…." (Def. Mot. at 13.) The hundreds of consumer complaints referred to in paragraph 17 are already publicly available on third-party websites. Thus, it is unclear how referring to such complaints in a class action complaint could cause any prejudice to GMRS.

GMRS's objection that the allegations are "hearsay" fares no better. "A motion to strike based on inadmissibility of evidence will fail if there is any possibility that the pleading could form the basis for admissible evidence." *Hallmark v. Cohen & Slamowitz, LLP*, 283 F.R.D. 136, 140 (W.D.N.Y. 2012) (quotation omitted). Here, evidence of the website complaints alleged in Paragraph 17 may be admissible to show, for example, GMRS's knowledge at the time of the incident that it was placing calls without consent—which could bear on whether damages in this

case can be trebled for willfulness.

At the end of the day, "Courts should not tamper with the pleadings unless there is a strong reason for doing so." *Total Containment, Inc. v. Environ Products, Inc.*, No. CIV. A. 91-7911, 1992 WL 208981, at *1 (E.D. Pa. Aug. 19, 1992) (quotations omitted). No reason exists here and GMRS the motion to strike portion of GMRS's Motion should be denied.

## III.    CONCLUSION

For the foregoing reasons, GMRS's Motion should be denied. For the dismissal portion of its Motion, no improper "claim-splitting" has occurred here because the class definitions do not overlap and GMRS's other arguments amount to (baseless) affirmative defenses. With respect to its motion to transfer, GMRS misunderstands the "first to file" rule and the interests of justice weigh against a transfer. Finally, paragraph 17 should not be stricken. GMRS would suffer no prejudice and it fails to show that the allegations cannot form the basis of admissible evidence.

Dated: August 14, 2015

                                        Respectfully submitted,

                                        ALICIA THOMPSON, individually
                                        and on behalf of a class of similarly
                                        situated individuals

                                        By: /s/ Steven L. Woodrow
                                        One of Plaintiff's Attorneys

Barry L. Cohen
Royer Cooper Cohen Braunfeld LLC
101 W. Elm Street, Suite 220
Conshohocken, PA 19428
Telephone: 484-362-2628
Fax: 484-362-2630

Steven L. Woodrow*

swoodrow@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

\* Admitted *Pro Hac Vice*

Attorneys for Plaintiff Thompson and the Putative Class

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 14, 2015, I caused the foregoing papers to be filed with the Court's electronic filing system, which will serve such papers on all counsel of record.

Dated: August 14, 2015

By:_____/s/ Steven L. Woodrow_____