IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALICIA THOMPSON, individually and on behalf of all others similarly situated, | : : : | |
| Plaintiffs, | : : | CIVIL ACTION No. 15-3576 |
| v. | : : | |
| GLOBAL MARKETING RESEARCH SERVICES, INC., | : : : | |
| Defendant. | : | |

January__19, 2016                                                             Anita B. Brody, J.

**MEMORANDUM**

Plaintiff Alicia Thompson brings this class action lawsuit against Defendant Global Marketing Research Services, Inc. ("GMRS") for alleged violations of the Telephone Consumer Protection Act ("TCPA"). Thompson seeks to represent a class of all individuals in Pennsylvania who received a call on their cell phone from GMRS and from whom GMRS failed to obtain prior express consent. GMRS now moves to transfer the case to the Middle District of Florida, where another class action lawsuit alleging that GMRS violated the TCPA is pending. *See* ECF Nos. 11 & 16. For the reasons stated below, I will grant GMRS's motion to transfer.[1]

I. **BACKGROUND**[2]

GMRS is a telephone research service company that conducts telephone surveys nationwide for business and political purposes. In conducting these surveys, GMRS uses an

---

[1] In the alternative, GMRS moves to dismiss Thompson's complaint or to strike certain allegations in the complaint. Because I will grant GMRS's motion to transfer, I will not address these alternative motions.
[2] Unless otherwise stated, the facts are drawn from Thompson's Class Action Complaint (ECF No. 1).

1

automatic telephone dialing system which stores and dials phone numbers *en masse*. GMRS allegedly obtains phone numbers from voter registration rolls and then places auto-dialed or pre-recorded calls to these phone numbers. At least some of these phone numbers are associated with cell phones. GMRS's system places numerous calls simultaneously, connects those calls that are answered, and disconnects the rest. GMRS makes these calls to cell phone users without obtaining their consent, or by obtaining "ratified" consent from those individuals who actually participate in its surveys.

On August 11, 2014, a class action lawsuit alleging that GMRS violated the TCPA was filed in the Middle District of Florida. *See Martin v. Global Mktg. Research Servs.*, No. 14-1290 (M.D. Fla. 2014). The complaint in that case alleged that GMRS "utilized an automatic telephone dialing system" and had "full knowledge that they [we]re placing autodialed phone calls to the cell phones of consumers without their consent and in the face of hundreds of consumer complaints." Class Action Compl. at 4, 6, *Martin*, No. 14-1290, ECF No. 1. It claimed that, in making these phone calls, GMRS violated 47 U.S.C. § 227.[3] *See id.* at 4-9. The plaintiffs in *Martin* brought the complaint on behalf of "all individuals in the United States" whose cell phones were called by GMRS without their prior consent. *Id.* at 7.

On June 9, 2015, the *Martin* plaintiffs sought leave to amend the class definition and file an amended complaint. The amended class definition includes:

> [a]ll individuals in the United States (1) to whom GMRS made a telephone call, between August 11, 2010 to the present, (2) to his or her cell phone; (3) from the phone number 800-251-5850, and (4) for whom GMRS claims it obtained consent to call in the same manner that GMRS contends it obtained consent to call the Plaintiffs.

---

[3] Under 47 U.S.C. § 227, it is unlawful "to make any call (other than a call made . . . with the prior express consent of the called party) using any automatic telephone dialing system or an artificial prerecorded voice . . . to any telephone number assigned to . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii); *see also* 47 C.F.R. § 64.1200(a)(1).

Mot. for Leave to File First Am. Class Action Compl. at 13, *Martin*, No. 14-1290, ECF No. 45. As particularly relevant here, the plaintiffs also sought to exclude from the class definition "all Persons in states where any federal class action has been filed against GMRS seeking certification of a class limited to persons of such states, including without limitation California and Pennsylvania." *Id.* (internal quotation marks omitted). The amended complaint in *Martin* contains substantially the same factual allegations—namely that, in violation of the TCPA, GMRS failed "to obtain any prior express consent (oral or written) to make the[] autodialed survey calls to random cell phone numbers." First Am. Class Action Compl. at 5, *Martin*, No. 14-1290, ECF No. 48.

The Florida district court granted the motion to amend on June 25, 2015. On that same day, the same attorneys who represent the *Martin* plaintiffs filed the present lawsuit in this Court against GMRS.[4] This complaint is brought on behalf of Thompson as well as:

> [a]ll individuals in Pennsylvania (1) to whom GMRS made a telephone call; (2) on his or her cell phone (3) from the phone number 800-251-5850 or a different number owned or controlled by GMRS; and (4) for whom GMRS procured any oral or written consent to be called in the same way GMRS claims it obtained oral or written consent to contact [Thompson].

Class Action Compl. at 7, ECF No. 1. Much like the *Martin* complaint, Thompson's complaint alleges that GMRS autodialed cell phone users using an automatic telephone dialing system without obtaining prior consent and claims that the company violated 47 U.S.C. § 227. Indeed, much of the language in Thompson's complaint is identical to the *Martin* complaint.

---

[4] On June 4, 2015, the same attorneys also filed another lawsuit against GMRS asserting nearly identical allegations in the Northern District of California. *See Zilveti v. Global Mktg. Research Servs.*, No. 15-2494 (N.D. Cal. 2015). The class in that case is limited to "individuals in California." Class Action Compl. at 6, *Zilveti*, No. 15-2494, ECF No. 1.

3

## II.   DISCUSSION

GMRS now moves to transfer Thompson's case to the Middle District of Florida, where the *Martin* lawsuit remains pending.[5] GMRS seeks to transfer Thompson's case under the first-to-file rule and 28 U.S.C. § 1404(a). Thompson argues that the first-to-file rule does not apply and that, even if it does, transfer is not warranted under § 1404(a).

### A.   The First-To-File Rule

The first-to-file rule provides that "[i]n all cases of concurrent jurisdiction, the Court which first has possession of the subject must decide it." *Smith v. McIver*, 22 U.S. (9 Wheat.) 532, 535 (1824). The rule "encourages sound judicial administration and promotes comity among federal courts of equal rank." *EEOC v. Univ. of Pa.*, 850 F.2d 969, 971 (3d Cir. 1988). It also protects "[t]he party who first brings a controversy into a court of competent jurisdiction [from] the vexation of subsequent litigation over the same subject matter." *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 930 (3d Cir. 1941). "The applicability of the first-filed rule is not limited to mirror image cases where the parties and the issues perfectly align. Rather, the principles underlying the rule support its application where the subject matter of the later filed case substantially overlaps with that of the earlier one." *Villari Brandes & Kline, PC v. Plainfield Specialty Holdings II, Inc.*, No. 09-2552, 2009 WL 1845236, at *6 (E.D. Pa. June 26, 2009); *see also Grider v. Keystone Health Plan Central, Inc.*, 500 F.3d 322, 333 n.6 (3d Cir. 2007) (suggesting that the first-to-file rule applies where "a determination in one action leaves little or nothing to be determined in the other" (internal quotation marks omitted)). The first-to-file rule permits a court to "stay, enjoin, or transfer a later-filed action" dealing with the same subject

---

[5] GMRS has filed a similar motion to transfer in *Zilveti*, which is pending before the California district court.

matter as a previously filed case in another district. *Keating Fibre Int'l, Inc. v. Weyerhauser Co.*, 416 F. Supp. 2d 1048, 1051 (E.D. Pa. 2006).

The subject matter of Thompson's lawsuit is substantially the same as the allegations in the first-filed *Martin* litigation. Thompson appears to concede as much; in her response to GMRS's motion, she acknowledges that "GMRS acted in a substantially similar manner towards *all* persons it called" and that the two cases "share the same assertion of rights and prayer of relief." Resp. in Opp. to Def.'s Mot. to Dismiss or Transfer at 4-5, ECF No. 13. Indeed, the complaint filed by Thompson contains nearly identical language to the *Martin* complaint.

Thompson nevertheless argues that the first-to-file rule does not apply because her complaint is brought solely on behalf of individuals in Pennsylvania, while the *Martin* class definition specifically excludes individuals in Pennsylvania. But "courts within and outside this Circuit have found no requirement that the parties in the concurrent actions be the same in order for the first-to-file rule to apply." *Shire U.S., Inc. v. Johnson Matthey, Inc.*, 543 F. Supp. 2d 404, 408 & n.22 (E.D. Pa. 2008) (collecting cases); *see also QVC, Inc. v. Patiomats.com, LLC*, No. 12-3168, 2012 WL 3155471, at *3 (E.D. Pa. Aug. 3, 2012) (ruling that transfer was permissible even though the plaintiff was not a party to the lawsuit pending in the transferee forum); *Maximum Human Performance, Inc. v. Dymatize Enters, Inc.*, No. 09-235, 2009 WL 2778104, at *3 (D.N.J. Aug. 27, 2009) ("For the first-to-file rule to apply, there must be a substantial overlap between the two actions, but the issues and parties involved need not be identical." (internal quotation marks omitted)).

Despite the fact that the class definitions in Thompson's case and the *Martin* litigation differ, the subject matter of the two cases is substantially the same. Thus, the first-to-file rule applies and weighs in favor of transfer.

### B. Transfer Under 28 U.S.C. § 1404(a)

Although the first-to-file rule supports transferring Thompson's case to the Middle District of Florida, the requirements of 28 U.S.C. § 1404(a) must also be met. *See Keating Fibre Int'l*, 416 F. Supp. 2d at 1052-53 (determining that the first-to-file rule applied and then looking to § 1404(a) to decide whether transfer was appropriate); *cf. Allianz Life Ins. Co. of N. Am. v. Estate of Bleich*, No. 08-668, 2008 WL 4852683, at *4 (D.N.J. Nov. 7, 2008) (finding that, despite the applicability of the first-to-file rule, transfer was not warranted under § 1404(a)). "The burden of establishing the need for transfer [under § 1404(a)] . . . rests with the movant." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

Under § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." In order to decide whether transfer is warranted, the district court must first determine whether the case could have been brought in the alternative district. The court must then weigh a variety of private and public interest factors to determine whether "the balance of conveniences and the public interest weigh in favor of transfer." *Keating Fibre Int'l*, 416 F. Supp. 2d at 1053. The Third Circuit, in *Jumara v. State Farm Insurance Company*, 55 F.3d 873 (3d Cir. 1995), articulated the private and public interest factors that courts typically consider in determining whether to transfer a case under § 1404(a) ("the *Jumara* factors"). The private interests include:

> plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses-but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly

>limited to the extent that the files could not be produced in the alternative forum).

55 F.3d at 879 (citations omitted). The public interests include:

>[T]he enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879-80.

Here, neither party disputes that this lawsuit could have been brought in the Middle District of Florida.[6] Further, the balance of conveniences and the public interest also supports transferring this case to the Middle District of Florida. Most importantly, permitting "a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy, and money that § 1404(a) was designed to prevent." *Ferens v. John Deere Co.*, 494 U.S. 516, 531 (1990) (internal quotation marks omitted). As Thompson acknowledges, "GMRS acted in a substantially-similar manner towards all persons it called" and the two cases "share the same assertion of rights and prayer for relief." Resp. in Opp. to Def.'s Mot. to Dismiss or Transfer at 4-5, ECF No. 13. Nevertheless, she argues that no efficiency gains will result by transferring her case to the Middle District of Florida because, in *Martin*, GMRS is not required to produce any information related to its Pennsylvania campaigns in discovery. Thus, in Thompson's view, "this separate

---

[6] Indeed, Thompson's counsel, who also represent the *Martin* plaintiffs, initially included Pennsylvanians in the *Martin* class definition.

7

proceeding is needed to that Plaintiff may obtain the relevant call data for Pennsylvania consumers." Notice of Supp. Auth. at 1, ECF No. 21.[7]

Even if a "separate proceeding" is necessary, however, there is no reason that it should proceed before this Court. Thompson's complaint does not allege that GMRS's conduct towards Pennsylvania residents is different than its conduct towards residents of other states; rather, her complaint largely mirrors the allegations in *Martin*. Thus, it is likely that much of the evidence in *Martin* regarding GMRS's use of autodialing technology and its policies about obtaining consent will overlap with the evidence presented in Thompson's case. As such, transferring this case to the Middle District of Florida—which is already overseeing discovery with respect to GMRS's campaigns in forty-eight other states—will potentially result in more streamlined discovery and a more efficient resolution of claims. This will both conserve judicial resources and be more convenient for the parties and the witnesses. *See Smithkline Corp. v. Sterling Drug, Inc.*, 406 F. Supp. 52, 56 (D. Del. 1975) (concluding that the transferring related actions would yield "the following benefits: (1) pre-trial discovery can be conducted more efficiently; (2) the witnesses can be saved the time and expense of appearing in more than one

---

[7] At the time counsel commenced this lawsuit, the parties in *Martin* were engaged in a dispute over the scope of discovery. Specifically, GMRS took the position that it would not provide any information with respect to its survey campaigns in states other than where the named plaintiffs reside (New Hampshire and North Carolina). The plaintiffs in *Martin* opposed this limitation. Indeed, counsel filed the present Pennsylvania-only class action in this court "as a direct response to GMRS's position in the *Martin* litigation that that case is limited solely to GMRS's survey campaigns in the states where the named Plaintiffs in that case reside." Resp. in Opp. to Def.'s Mot. to Dismiss or Transfer at 16, ECF No. 13. The *Martin* court has since resolved the discovery dispute against GMRS. It held that GMRS would have to provide information about its campaigns nationwide "except as to programs and campaigns conducted exclusively in California and Pennsylvania." *See* Order at 5, *Martin*, No. 14-1290, ECF No. 84. It reached this conclusion because "[t]he complaint identifies a nationwide class, with the exception of persons in states where any federal class action has been filed against GMRS"—i.e., California and Pennsylvania. *Id.* (internal quotation marks omitted).

tribunal; (3) duplicative litigation can be avoided, thereby eliminating unnecessary expense to the parties; and (4) inconsistent results can be avoided"); *see also Wheaton Indus., Inc. v. Aalto Scientific, Ltd.*, No. 12-6965, 2013 WL 4500321, at *4 (D.N.J. Aug. 21, 2013) (concluding that the convenience of the parties and witnesses weighed in favor of transfer where there were "two other actions involving the same factual background" which would "necessitate production of the same witnesses and other documentary evidence").

Thus, the existence of a related action in the Middle District of Florida, and the benefits that will flow from transferring Thompson's case to that Court, weigh heavily in favor of transfer. Indeed, "the presence of a related action in the transferee forum is such a powerful reason to grant a transfer that courts do so even where other *Jumara* factors . . . would suggest the opposite." *Villari Brandes & Kline, PC*, 2009 WL 1845236, at *5; *see also Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220-21 (7th Cir. 1986) (noting that the "interest of justice" component of § 1404(a)—which "relate[s] to the efficient administration of the court system"—"may be determinative in a particular case").

Here, the other *Jumara* factors do not outweigh the "strong policy favoring the litigation of related claims before the same tribunal." *Smithkline Corp.*, 406 F. Supp. at 55. For example, the presence of the related *Martin* litigation undermines the deference that might otherwise be afforded to Thompson's decision to file her complaint in this Court. *See Snythes, Inc. v. Knapp*, 978 F. Supp. 2d 450, 459 (E.D. Pa. 2013) ("Where a related action is pending in another forum, the plaintiffs' choice is entitled to less deference."); *Montgomery v. Schering-Plough Corp.*, No. 07-194, 2007 WL 614156, at *3 (E.D. Pa. Feb. 22, 2007) (concluding that, "[e]ven if full deference were accorded to

Plaintiff's choice, . . . transfer is warranted in the interests of judicial efficiency [because of] [t]he pendency of a related case in the proposed transferee forum").

Further, because GMRS allegedly engaged in unlawful conduct nationwide, Pennsylvania may not have a particular local interest in the resolution of this lawsuit relative to other states. *See Adaptix, Inc v. HTC Corp.*, 937 F. Supp. 2d 867, 878 (E.D. Tex. 2013) ("When the accused products or services are sold nationwide, the alleged injury does not create a substantial local interest in any particular district."); *cf. Niagara Preservation, Coal., Inc. v. FERC*, 956 F. Supp. 2d 99, 107 (D.D.C. 2013) (concluding that New York had a local interest in a project affecting Niagara Falls since "most of the impacts of the project will be felt by residents of New York").

Ultimately, the pendency of the related *Martin* action in the Middle District of Florida is given considerable weight, and the other *Jumara* factors do not tip the scales against transferring Thompson's case.

## III.   CONCLUSION

Because the first-to-file rule applies to this case, and the *Jumara* factors support transferring Thompson's case under 28 U.S.C. § 1404(a), I will grant GMRS's motion to transfer.

s/Anita B. Brody

_____

ANITA B. BRODY, J.